# FIXED/ADJUSTABLE RATE NOTE
(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE PROVIDES FOR A CHANGE IN MY INITIAL FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

July 25, 2006 [Date]    ANAHEIM [City]    CA [State]

128 BENTON ST
SPRINGFIELD, MA 01109
[Property Address]

PNOTE

### 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 128,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **LONG BEACH MORTGAGE COMPANY**

I will make all payments under this Note in the form of cash, check or money order. I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.950 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS
**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **September , 2006**. I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **August 1 , 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
**P.O. Box 2441, Chatsworth CA 91313-2441**
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $ 934.76 . This amount may change.

**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
**(A) Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **August , 2008**, and the interest rate I will pay may change on that day every **sixth** month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding **Four and Ninety Nine Hundredths** percentage point(s) ( 4.990 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than 9.950 % or less than 7.950 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceeding **six** months. My interest rate will never be greater than 13.950 % or less than 7.950 %.

(E) **Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) *Notice of Changes*
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5. **BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

Except as provided below, I may make a Full or Partial Prepayment at any time. 

When I make a Full or Partial Prepayment, I will notify the Note Holder in writing that I am doing so. Any Partial Prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial Prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Note Holder agrees in writing to such changes.

6. **LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. **BORROWER'S FAILURE TO PAY AS REQUIRED**
(A) **Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of    **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     **3.000**    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
(B) **Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
(C) **Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
(D) **No Waiver by Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
(E) **Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. **GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Section 18 of the Security Instrument provides as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Section 18 of the Security Instrument shall then instead provide as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
>
> To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.
>
> If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

X _____/s/ Roger Okum_____ (Seal)        _____ (Seal)
ROGER OKUM                         -Borrower                                     -Borrower

_____ (Seal)                _____ (Seal)
                                    -Borrower                                     -Borrower

**MULTISTATE FIXED/ADJUSTABLE RATE NOTE - LIBOR**                             [Sign Original Only]

4140624  (0605)                          Page 3 of 3                    **LOAN NO. 6758123-0**
41406243 (06/21/06) JMR

Loan No: **6758123-0**

### LENDER IDENTIFICATION ADDENDUM TO NOTE

**THIS LENDER IDENTIFICATION ADDENDUM TO NOTE** is attached to, incorporated into, and shall be deemed to amend and supplement the Note of this same date given by the undersigned (the "Borrower(s)") to Long Beach Mortgage Company, and covering the property located at:

**128 BENTON ST,            SPRINGFIELD, MA  01109**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Note, the parties hereto further agree that:

> "Lender" shall mean WASHINGTON MUTUAL BANK, as successor-in-interest to LONG BEACH MORTGAGE COMPANY by operation of law. WASHINGTON MUTUAL BANK is doing business under the name LONG BEACH MORTGAGE. WASHINGTON MUTUAL BANK is a federal savings bank organized and existing under the laws of the United States of America, and is regulated by the Office of Thrift Supervision.

Except as amended herein, everything else contained in the Note remains unchanged and in full force and effect.

**BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Lender Identification Addendum to Note.**

_____  7/25/06    _____
**ROGER O KUM**              Date                                Date

**LENDER IDENTIFICATION ADDENDUM TO NOTE**
**4140780**  (0802)                     VMP Mortgage Solutions, Inc.
41407801 (04/28/06) JMR

# FIXED/ADJUSTABLE RATE NOTE
(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE PROVIDES FOR A CHANGE IN MY INITIAL FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

July 25, 2006      **ANAHEIM**      **CA**
[Date]      [City]      [State]

**128 BENTON ST
SPRINGFIELD, MA 01109**
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ **128,000.00** (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **LONG BEACH MORTGAGE COMPANY**.

I will make all payments under this Note in the form of cash, check or money order. I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **7.950** %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **September, 2006**. I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **August 1, 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
**P.O. Box 2441, Chatsworth CA 91313-2441**
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ **934.76**. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **August, 2008**, and the interest rate I will pay may change on that day every **sixth** month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Four and Ninety Nine Hundredths** percentage point(s) ( **4.990** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.950** % or less than **7.950** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) ( **1.000** %) from the rate of interest I have been paying for the preceeding **six** months. My interest rate will never be greater than **13.950** % or less than **7.950** %.

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - LIBOR

Page 1 of 3

VMP Mortgage Solutions, Inc.

4140624 (0606)
41406241 (06/21/06) JMR

**LOAN NO. 6758123-0**

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

Except as provided below, I may make a Full or Partial Prepayment at any time. 

When I make a Full or Partial Prepayment, I will notify the Note Holder in writing that I am doing so. Any Partial Prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial Prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Note Holder agrees in writing to such changes.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Section 18 of the Security Instrument provides as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Section 18 of the Security Instrument shall then instead provide as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
**ROGER O KUM**                    -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                                   -Borrower                                      -Borrower

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - LIBOR                              [Sign Original Only]

4140624 (0605)                        Page 3 of 3                    LOAN NO. 6758123-0
41406243 (06/21/06) JMR

# FIXED/ADJUSTABLE RATE NOTE
(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY INITIAL FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

July 25, 2006     ANAHEIM     CA
[Date]     [City]     [State]

**128 BENTON ST**
**SPRINGFIELD, MA 01109**
[Property Address]

1. **BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 128,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **LONG BEACH MORTGAGE COMPANY**.
I will make all payments under this Note in the form of cash, check or money order. I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.950 %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3. **PAYMENTS**
(A) **Time and Place of Payments**
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the first day of each month beginning on September , 2006. I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on August 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
**P.O. Box 2441, Chatsworth CA 91313-2441**
or at a different place if required by the Note Holder.
(B) **Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $ 934.76 . This amount may change.
(C) **Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4. **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) **Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of August 2008 , and the interest rate I will pay may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B) **The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) **Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding Four and Ninety Nine Hundredths percentage point(s) ( 4.990 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
(D) **Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than 9.950 % or less than 7.950 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceeding six months. My interest rate will never be greater than 13.950 % or less than 7.950 %.

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - LIBOR
4140824 (0606)
41406341 (06/21/06) JMR
Page 1 of 3
VMP Mortgage Solutions, Inc.
LOAN NO. 6758123-0

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5. **BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

Except as provided below, I may make a Full or Partial Prepayment at any time. XXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX.

When I make a Full or Partial Prepayment, I will notify the Note Holder in writing that I am doing so. Any Partial Prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial Prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Note Holder agrees in writing to such changes.

6. **LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. **BORROWER'S FAILURE TO PAY AS REQUIRED**
   **(A) Late Charges for Overdue Payments**
   If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 3.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
   **(B) Default**
   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
   **(C) Notice of Default**
   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
   **(D) No Waiver by Note Holder**
   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
   **(E) Payment of Note Holder's Costs and Expenses**
   If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. **GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - LIBOR

4140624 (0605)
4140624Z (06/21/06) JMR

Page 2 of 9

LOAN NO. 6758123-0

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Section 18 of the Security Instrument provides as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Section 18 of the Security Instrument shall then instead provide as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

X _____ (Seal)    _____ (Seal)
ROGER OKUM                        -Borrower                                  -Borrower

_____ (Seal)    _____ (Seal)
                                  -Borrower                                  -Borrower

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - LIBOR                                 [Sign Original Only]

4140624 (0606)                                                                LOAN NO. 8768123-0
41406243 (06/21/06) JMR                        Page 3 of 3

# FIXED/ADJUSTABLE RATE NOTE
(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE PROVIDES FOR A CHANGE IN MY INITIAL FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

July     25, 2006               ANAHEIM                CA
   [Date]                         [City]              [State]

128 BENTON ST
SPRINGFIELD, MA  01109
[Property Address]

1. **BORROWER'S PROMISE TO PAY**
   In return for a loan that I have received, I promise to pay U.S. $ 128,000.00         (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **LONG BEACH MORTGAGE COMPANY**
   I will make all payments under this Note in the form of cash, check or money order. I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**
   Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          7.950  %. The interest rate I will pay may change in accordance with Section 4 of this Note.
   The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3. **PAYMENTS**
   (A) Time and Place of Payments
   I will pay principal and interest by making a payment every month.
   I will make my monthly payments on the first day of each month beginning on       **September  , 2006**  .
   I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **August     1, 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at
   **P.O. Box 2441, Chatsworth CA 91313-2441**
   or at a different place if required by the Note Holder.
   (B) Amount of My Initial Monthly Payments
   Each of my initial monthly payments will be in the amount of U.S. $     934.76         . This amount may change.
   (C) Monthly Payment Changes
   Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4. **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   (A) Change Dates
   The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of  **August    ,
   2008**  , and the interest rate I will pay may change on that day every   **sixth**    month thereafter. Each date on which my interest rate could change is called a "Change Date."
   (B) The Index
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
   If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

   (C) Calculation of Changes
   Before each Change Date, the Note Holder will calculate my new interest rate by adding **Four and Ninety Nine Hundredths**   percentage point(s) (  4.990  %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
   The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
   (D) Limits on Interest Rate Changes
   The interest rate I am required to pay at the first Change Date will not be greater than       9.950   % or less than
       7.950    %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One**       percentage point(s) (   1.000  %) from the rate of interest I have been paying for the preceeding **six**        months. My interest rate will never be greater than **13.950**   % or less than **7.950**   %.

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - LIBOR

Page 1 of 3

4140624  (0606)                      VMP Mortgage Solutions, Inc.            **LOAN NO. 6758123-0**
41406241 (06/21/06) JMR

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

Except as provided below, I may make a Full or Partial Prepayment at any time. 

When I make a Full or Partial Prepayment, I will notify the Note Holder in writing that I am doing so. Any Partial Prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial Prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Note Holder agrees in writing to such changes.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Section 18 of the Security Instrument provides as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Section 18 of the Security Instrument shall then instead provide as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
>
> To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.
>
> If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

X _____ (Seal)     _____ (Seal)
ROGER OKUM                         -Borrower                                     -Borrower

_____ (Seal)     _____ (Seal)
                                   -Borrower                                     -Borrower

**MULTISTATE FIXED/ADJUSTABLE RATE NOTE - LIBOR**     [Sign Original Only]

4140624 (0605)     Page 3 of 3     **LOAN NO. 6758123-0**
41406243 (06/21/06) JMR

Loan No: **6758123-0**

## LENDER IDENTIFICATION ADDENDUM TO NOTE

**THIS LENDER IDENTIFICATION ADDENDUM TO NOTE** is attached to, incorporated into, and shall be deemed to amend and supplement the Note of this same date given by the undersigned (the "Borrower(s)") to Long Beach Mortgage Company, and covering the property located at:

**128 BENTON ST,            SPRINGFIELD, MA  01109**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Note, the parties hereto further agree that:

> "Lender" shall mean WASHINGTON MUTUAL BANK, as successor-in-interest to LONG BEACH MORTGAGE COMPANY by operation of law. WASHINGTON MUTUAL BANK is doing business under the name LONG BEACH MORTGAGE. WASHINGTON MUTUAL BANK is a federal savings bank organized and existing under the laws of the United States of America, and is regulated by the Office of Thrift Supervision.

Except as amended herein, everything else contained in the Note remains unchanged and in full force and effect.

**BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Lender Identification Addendum to Note.**

_Roger O. Kum_   7/25/06
**ROGER O KUM**                    Date                                                                           Date

**LENDER IDENTIFICATION ADDENDUM TO NOTE**
4140780  (0602)                                VMP Mortgage Solutions, Inc.
41407801 (04/28/06) JMR

Loan No: **6758123-0**

## LENDER IDENTIFICATION ADDENDUM TO NOTE

**THIS LENDER IDENTIFICATION ADDENDUM TO NOTE** is attached to, incorporated into, and shall be deemed to amend and supplement the Note of this same date given by the undersigned (the "Borrower(s)") to Long Beach Mortgage Company, and covering the property located at:

**128 BENTON ST,           SPRINGFIELD, MA   01109**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Note, the parties hereto further agree that:

> "Lender" shall mean WASHINGTON MUTUAL BANK, as successor-in-interest to LONG BEACH MORTGAGE COMPANY by operation of law. WASHINGTON MUTUAL BANK is doing business under the name LONG BEACH MORTGAGE. WASHINGTON MUTUAL BANK is a federal savings bank organized and existing under the laws of the United States of America, and is regulated by the Office of Thrift Supervision.

Except as amended herein, everything else contained in the Note remains unchanged and in full force and effect.

**BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Lender Identification Addendum to Note.**

_____    _____
**ROGER O KUM**                Date                               Date

_____    _____

**LENDER IDENTIFICATION ADDENDUM TO NOTE**
**4140780** (0602)                    VMP Mortgage Solutions, Inc.
41407801 (04/28/06) JMR

Loan No:    **6762883-0**

## LENDER IDENTIFICATION ADDENDUM TO NOTE

**THIS LENDER IDENTIFICATION ADDENDUM TO NOTE** is attached to, incorporated into, and shall be deemed to amend and supplement the Note of this same date given by the undersigned (the "Borrower(s)") to Long Beach Mortgage Company, and covering the property located at:

**128 BENTON ST,             SPRINGFIELD, MA    01109**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Note, the parties hereto further agree that:

"Lender" shall mean WASHINGTON MUTUAL BANK, as successor-in-interest to LONG BEACH MORTGAGE COMPANY by operation of law. WASHINGTON MUTUAL BANK is doing business under the name LONG BEACH MORTGAGE. WASHINGTON MUTUAL BANK is a federal savings bank organized and existing under the laws of the United States of America, and is regulated by the Office of Thrift Supervision.

Except as amended herein, everything else contained in the Note remains unchanged and in full force and effect.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Lender Identification Addendum to Note.

_/s/ Roger O. Kum_         7/28/06
**ROGER O KUM**                Date                                                         Date

**LENDER IDENTIFICATION ADDENDUM TO NOTE**
4140780  (0602)                          VMP Mortgage Solutions, Inc.
41407801 (04/28/06) JMR